IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MIKHAIL GORDON**                                                                                       **PLAINTIFF**

**VS.**                                                            **CIVIL ACTION NO. 3:19-CV-259 HTW-LGI**

**UNITED MEDICAL RECOVERY, LLC**                                                **DEFENDANT**

## ORDER IMPOSING SANCTIONS

BEFORE THIS COURT are: 1) the Defendant's Motion for Sanctions against Plaintiff's Counsel [doc. 21]; and 2) the motion filed by Plaintiff's counsel to be allowed to withdraw [doc. no. 19]. This court previously dismissed this case for Plaintiff's failure to prosecute.  David McDevitt, one of Plaintiff's attorneys of record, conceded that his client had abandoned his lawsuit and that this court should dismiss the Complaint.  Accordingly, this court ordered that the lawsuit be dismissed with prejudice. [doc. no. 39].  This court's order included a schedule for supplemental briefing on these two remaining motions.   That briefing has now been completed, and this court is prepared to make its ruling.

## I. BACKGROUND

This is a case brought under the  Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, et seq.  The FDCPA is  federal legislation, enacted by Congress, thus presenting a federal question and invoking the jurisdiction of this court pursuant to federal

1

question subject matter jurisdiction under 28 U.S.C. §1331.[1] The stated purpose of the FDCPA, according to the Act, is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Title 15 U.S.C. §1692 (e).

Plaintiff Mikhail Gordon, a consumer-debtor, claimed that the Defendant, United Medical Recovery, ("UMR") a debt collector, violated Title §1692g(a)(4) of the FDCPA by failing to include what is often referred to as the "validation notice" or the "in writing" notice in its letter to him dated May 25, 2018. See *Koesler v. Beneficial Fin. I, Inc.*, 267 F.Supp.3d 873, 884 (W.D. Tex. 2016). (quoting *Garcia-Contreras v. Brock & Scott, PLLC,* 775 F.Supp.2d 808, 812 (M.D.N.C. 2011)). The validation notice is that part of the communication from a debt collector that informs the consumer that he has a right to dispute the debt, in writing, within thirty (30) days. The FDCPA requires this notice to be included in the debt collector's "initial communication" to the debtor or within five days thereafter.

If a debt collector does not provide the proper notice under the FDCPA, the Act requires that it pays the consumer's actual damages, additional damages (up to $1,000), costs of the action, and reasonable attorneys' fees. 15 U.S.C. §1692(k)(a).

The main factual issue presented by this case was whether a 2018 letter received by the Plaintiff comprised the "initial communication" as Plaintiff claimed, or whether Plaintiff had received the initial communication two years earlier, in a 2016 letter, as Defendant

---

[1] **§ 1331.  Federal Question**
   The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Title 28 U.S.C. § 1331.

claimed. Neither side contends that there was a separate verification notice sent within five days of the letter; so, it is the letters, themselves, that are at issue here.

Once briefing was completed on Defendant's "Motion for Judgment on the Pleadings or to Dismiss or For Summary Judgment," [doc. no. 10], but before this court had issued its ruling on the motion, Defendant submitted a supplemental declaration with Exhibits. This supplemental information tended to prove that the 2018 letter, which was the sole basis of Plaintiff's case, was *not* the initial communication sent to Plaintiff by the Defendant.

Plaintiff's counsel contend that they became unable to reach their client after that point and were, thus, unable to verify Defendant's information or to obtain guidance from their client on how, or whether to proceed. Plaintiff's attorneys also claim that they did not feel they could dismiss the case without their client's knowledge or consent, so they sought, instead, to withdraw from the case. Withdrawal of Plaintiff's attorneys from the case, so opined the attorneys, would have allowed them to wash their hands of the entire episode. This court and the Defendant, however, would have been left to contend with the unresolved, pending litigation that remained.

This court conducted a telephonic hearing on March 18, 2021, during which this court instructed Plaintiff's attorney, David McDevitt, to attempt to contact his client and to document proof of same. Another telephonic hearing was conducted on March 24, 2021. At that hearing, Plaintiff's counsel conceded that the Plaintiff, Mikhail Gordon, had abandoned his lawsuit. This court dismissed the lawsuit with prejudice and established a supplemental briefing schedule for the Defendant's Motion for Sanctions. Plaintiff's Motion for Withdrawal of Counsel also remains pending.

Defendant UMR contends that Plaintiff's claim under the FDCPA was frivolous, that is, without any basis in fact or law. Although this court does not agree that this case was *legally* groundless, this court agrees with UMR that Plaintiff and his attorneys brought a *factually* groundless case. Defendant asks this court to sanction Plaintiff's attorneys and require that UMR be reimbursed for its costs, including attorneys' fees, based on one or more of several grounds.

## II. LEGAL AUTHORITY FOR IMPOSITION OF SANCTIONS

The legal grounds urged upon this court by Defendant UMR include: **(a)** the inherent authority of this court to impose sanctions and protect the judicial process; **(b)** Title 15 § 1692k(a)(3) of the FDCPA; **(c)** Rule 11 of the Federal Rules of Civil Procedure; **(d)** Rule 41(a)(2) of the Federal Rules of Civil Procedure; or **(e)** Title 28 U.S.C. §1927. [doc. no. 40 at p. 17].

### a. The Court's Inherent Power[2]

The threshold for the use of this court's inherent power to impose sanctions is high. *Chaves v. M/V Medina Star,* 47 F.3d 153, 156 (5th Cir.1995) (citing *Reed v. Iowa Marine and Repair Corp.,* 16 F.3d 82 (5th Cir.1994)). "Indeed, the Supreme Court has cautioned that 'because of their very potency, inherent powers must be exercised with restraint and discretion.'" *Id.,* (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991)). Moreover, to impose sanctions under its inherent

---

[2] , See e.g., *Snider v. L-3 Communications Vertex Aerospace, L.L.C.,* 946 F.3d 660, 678 (5th Cir. 2019); *Olivarez v. GEO Group., Inc.*, 844 F.3d 200, 203 (5th Cir. 2016) ("The district courts wield their various sanction powers at their broad discretion.") (quoting *Topalian v. Ehrman,* 3 F.3d 931, 934 (5th Cir. 1993).

authority this court must make a finding of bad faith. *Pena v. Lone Star Nat'l Bank, N.A.,* 807 F. App'x 353, 356 (5th Cir. 2020) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 49-50 (1991)); See *In re Yorkshire, LLC,* 540 F.3d 328, 332 (5th Cir. 2008). This court is not persuaded that Plaintiff's counsel acted in bad faith. Plaintiff's counsel appeared to believe, in good faith, that the 2018 letter was the first communication received by their client, for all of the reasons stated in their opposition brief and discussed in this opinion.

### b. Title 15 § 1692k(a)(3)

Section §1692k(a)(3)[3] of the FDCPA, another basis for sanctions suggested by Defendant, would require this court to make a finding that the action was brought a) in bad faith *and* b) for the purpose of harassment. Both components are required under the language of the statute. This court is not persuaded that either of these findings is appropriate here, but certainly not both.

### c. Fed. R. Civ. P. 41(a)(2)

Rule 41(a)(2)[4] of the Federal Rules of Civil Procedure does not specifically address monetary sanctions, but it does allow the court to dismiss an action at the plaintiff's request on terms that the court considers proper. This provision gives this court broad discretion in

---

[3] This section provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs. Title 15 U.S.C.A. § 1692k(3).

[4] Fed. R. Civ. P. 41 provides in pertinent part:
(a) . . .
**(2) By Court Order; Effect.** Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, ***on terms that the court considers proper.*** . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice. Fed. R. Civ. P. 41(a)(1) (emphasis added).

fashioning the terms under which the case is finally dismissed, including the imposition of sanctions and/or fees and costs. Rule 41(a)(2) is applicable to the circumstances here, but this court finds that Rule 11 most directly addresses the issues with which we are here concerned.

### d. Title 28 U.S.C. §1927

This court does not find that Plaintiff's counsel "unreasonably *and* vexatiously" multiplied the proceedings, as required for sanctions to be imposed under 28 U.S.C. §1927. [5] Although Attorney Hussey and Attorney McDevitt did not dismiss or withdraw the Complaint immediately upon receipt of the supplemental proof, they discontinued any further prosecution of the case after that point.  They only responded (in order to protect the rights of their client, they say) to motions filed by the Defendant.  This court does not find § 1927 applicable to the case at hand.

### e. Fed. R. Civ. P. 11

Rule 11 of the Federal Rules of Civil Procedure is most applicable to the circumstances with which we are faced here. This court, then, undertakes to examine the sanctions issue primarily under the provisions of Fed. R. Civ. P. 11.

---

[5] Section 1927 provides as follows:
An attorney admitted before any court of the United States who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. Title 28 U.S.C. § 1927.

### III.     RULE 11 SANCTIONS

The United States Court of Appeals for the Fifth Circuit has interpreted Rule 11[6] to impose three affirmative duties upon an attorney or litigant. *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1023 (5th Cir. 1994). These duties are:

> 1) that the attorney has conducted a reasonable inquiry into the facts which support the document;
> 2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and
> 3) that the modification is not interposed for purposes of delay, harassment, or increasing the costs of litigation.

*Childs v. State Farm Mut. Auto. Ins. Co.,* 29 F.3d 1018, 1023–24 (5th Cir. 1994).

**a. Reasonable Inquiry Into the Facts**

Defendant claims that Plaintiff's counsel breached the first two duties listed above. This court begins with the first of the duties allegedly breached, failing to make reasonable inquiry into the *facts* supporting the Complaint.

Plaintiff's attorneys contend that their decision to initiate this lawsuit was proper based on the facts, since they reasonably believed that the 2018 letter was Defendant's first

---

[6]Fed. R. Civ. P. 11 provides in pertinent part:
 (b**) Representations to the Court.**  By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
  (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
  (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
  (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;…
Fed. R. Civ. P. 11(b).

7

communication with Plaintiff about the debt. The language of the letter reads like an initial communication, they say. In fact, it is almost identical to the purported initial letter sent by Defendants in 2016. The only difference between the two letters is the one sentence containing the 'in writing' provision that is contained in the 2016 letter. Gordon's attorneys also claim they had been informed by their client that the 2018 letter was the first communication he had received from AMR.

All of these factors apparently caused Plaintiff's attorneys, Curtis Ray Hussey and David N. McDevitt, to believe that the 2018 letter was a form letter used by UMR as its initial communication sent to all of its debtors. Gordon's attorneys were so convinced that UMR was using a form letter that was not FDCPA-compliant, that they filed this case as a putative class action lawsuit.

It appears that these attorneys relied exclusively upon the language of the letter and the statements of their client to establish the facts on which the lawsuit was based. They have not provided proof of any additional pre-litigation investigation into the facts.

Defendant, in its *Answer* [doc. no. 7] and its *Motion to Dismiss* [doc. no. 10], alerted Plaintiff's counsel to the existence of the 2016 letter. It appears, though, that Plaintiff's counsel once again relied exclusively on the word of their client. Counsel included the following in the brief in opposition to Defendant's *Motion for Judgment on the Pleadings or to Dismiss or For Summary Judgment.* "When Defendant claimed that it had sent Plaintiff a similar letter in 2016, Plaintiff's counsel conferred with its client, who adamantly (and believably) denied this claim." *Plaintiff 's Memorandum in Opposition* [doc. no. 25 p.2 ]. "In response, Plaintiff stated *emphatically* and *unequivocally* that he did not receive such a letter in 2016 and confirmed to his counsel that the May 25, 2018 letter was the first time he

received any communication from Defendant about the hospital bill." *Id*.at p.6. Attorneys for Plaintiff have not shown any additional investigation that they did.

Defendant, too, it seems, could have investigated the case more thoroughly earlier in the litigation. The lawsuit was filed on April 12, 2019. The Defendant filed its "Motion for Judgment on the Pleadings or to Dismiss or For Summary Judgment" [doc. 10] on September 3, 2019. A declaration from an employee of AMR was attached as an Exhibit to the Motion, stating that an earlier letter had been sent to Plaintiff. It wasn't until November of 2019, however, after briefing on the motion had closed, that Defendant filed a supplemental declaration from this same employee, Mysty Langford.

Mysty Langford's newer declaration stated that after Plaintiff received the letter of May 17, 2016, Gordon (or someone on his behalf) had called United Medical Recovery, made arrangements for a payment plan, and had actually made two payments on his account. Receipts for the two payments were attached to the supplemental declaration. This serves as unrefuted proof that the 2018 letter Plaintiff received was not the "initial communication" as contemplated by the FDCPA.

This was the critical turning point in this litigation. Plaintiff's counsel have not persisted with this litigation since that time. Plaintiff's lawyers say they attempted to contact their client to discuss the supplemental information, but were unable to reach him, despite numerous attempts.

The Fifth Circuit has established factors to determine whether an attorney has made a reasonable inquiry into the facts sufficient to satisfy Rule 11. "[T]he district court may consider such factors as the time available to the signer for investigation; the extent of the attorney's reliance upon his client for the factual support for the document; the feasibility of a

9

prefiling investigation; whether the signing attorney accepted the case from another member of the bar or forwarding attorney; the complexity of the factual and legal issues; and the extent to which development of the factual circumstances underlying the claim requires discovery. *Thomas v. Cap. Sec. Servs., Inc.,* 836 F.2d 866, 875 (5th Cir. 1988); See *St. Amant v. Bernard,* 859 F.2d 379, 383 (5th Cir.1988).

Most of these factors do not weigh in favor of Hussey and McDevett. Regarding number 4), there is no information on whether the case was referred from another attorney, but that would probably have no bearing here. Only the final factor weighs slightly in favor of these lawyers, since the facts of the case might reasonably be expected to be uncovered during the discovery process; however, lawyers should have more than a client's unsupported word to provide the underpinnings of a lawsuit.

In *Childs v. State Farm Mut. Auto Ins. Co.,* 29 F.3d 1018, 1024 (5th Cir. 1994), the Fifth Circuit Court of Appeals found that the plaintiff's attorney had initially conducted a sufficient inquiry to satisfy Rule 11. During discovery however, significant evidence emerged that the vehicular accident forming the basis of Plaintiff's suit had been staged – evidence that the district court called clear and overwhelming. The appellate court stated that while this information was being developed, the plaintiff's attorney "could not just cling tenaciously to the investigation he had done at the outset of the litigation and bury his head in the sand." *Id.* at 1025.

The attorney in *Child*s claimed to have taken additional investigative steps once the alleged fraud was revealed. The Court though, said these efforts could be summed up as asking his client and his alleged co-conspirators if they were frauds, and reviewing the

evidence. *Id.,* at 1025.  The district court found, and the Fifth Circuit agreed, that this inquiry was not reasonable under the circumstances and this attorney had violated Rule 11.

Without deciding whether Hussey's and McDevitt's initial investigation was adequate, once the supplemental information was provided concerning the 2016 letter and subsequent payments, they could not stand on the limited investigation they had done at the outset.  The mostly undocumented attempts to inquire of their client as to the truth of the matter falls far short of what the Fifth Circuit found to be inadequate investigation in *Childs*.

This court is persuaded that even if plaintiff's attorneys initially met their investigative burden, they failed to conduct a reasonable inquiry after new information was revealed, to determine if Plaintiff's claim was well-grounded in fact. Plaintiff's attorneys, therefore, have failed to meet the first affirmative duty under Fed. R. Civ. P. 11 as interpreted by the Fifth Circuit, to conduct a reasonable inquiry into the *facts* supporting the Complaint. See *Childs v. State Farm Mut. Auto. Ins. Co.,* 29 F.3d 1018, 1023–24 (5th Cir. 1994).

### b. Reasonable Inquiry Into the Law

As to the second duty assigned to counsel under Rule 11,  it is not evident that Plaintiff's counsel failed to make reasonable inquiry into the *law*.  The second affirmative duty under Rule 11, as found by the Fifth Circuit Court of Appeals, is that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law.

This court does not agree with UMR's assessment that this case was legally frivolous. The FDCPA, at §1692g(a), requires the debt collector to provide the validation notice to the consumer, in writing, in its *initial* communication with the debtor.  It is evident that the letter

11

of May 25, 2018, received by Gordon did not contain the "in writing" language. The relevant portion of this letter received by Gordon reads as follows:

> If any portion of this debt is disputed, you are to notify us within 30 days after receipt of notice, and if you do not, we will assume the debt to be valid. If you indicate a dispute, we will provide you with further evidence concerning the validity of the debt. . . .

May 25, 2018 Letter [doc. no. 10-1 at p.4] (emphasis in original).

This court need not decide whether the content of the 2018 letter complied with the FDCPA requirements, since this case has been dismissed; but there is at least an arguable claim that it does not. This is sufficient to meet the Rule 11 requirements that the filed document embodies existing legal principles.

The May 25, 2018 letter, UMR says, was an "open account" demand letter, which was sent to Gordon as a pre-requisite to filing suit against him in state court, and was not required to contain the "in writing" notice, in any event. If it meets the definition of "initial communication" from a debt collector to a debtor under the FDCPA, however, it must contain the "in writing" notice, without regard to what other purpose it is meant to serve and without regard for the label attached to it by the sender. Plaintiff's lawyers were reasonable in their belief that their lawsuit had ***legal*** merit.

Defendant contends that if Plaintiff's counsel had made adequate inquiry into the law, they would have realized that *res judicata* and the *Rooker-Feldman* doctrine[7] would bar

---

[7] The *Rooker–Feldman* has its origin in two Supreme Court cases, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine holds that lower United States federal courts cannot not sit in direct review of state court decisions unless Congress has specifically authorized such relief. *Id.* "[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state

their client's claim.  This court does not find this issue so easily resolved in Defendant's favor.

On December 20, 2018, Greenwood Leflore County Hospital obtained a Default Judgment [doc. no. 7-1 at p.16] against Gordon for the underlying debt in this case. *Greenwood Leflore Hosp. v. Mikhail S. Gordon,* Cause No. 2018-0298-COCI.   UMR claims that Gordon's FDCPA claim is an attack on that judgment and, therefore, this court does not have jurisdiction over the claim because of  *Rucker-Feldman*.

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir.1994). See also *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004) (citing *Reitnauer v. Texas Exotic Feline Found., Inc*. 152 F.3d 341, 343 (5th Cir. 1998).  According to UMR, the propriety of the May 25, 2018 "open account" letter is, therefore, *res judicata,* and it cannot be attacked in this federal district court because of the *Rooker-Feldman* doctrine.

The doctrine is a narrow one, and "generally applies only where a plaintiff seeks relief that *directly* attacks the validity of an existing state court judgment." *Truong v. Bank of Am., N.A.,* 717 F.3d 377, 384 (5th Cir. 2013) (quoting *Weaver v. Texas Capital Bank, N.A.,* 660 F.3d 900, 904 (5th Cir. 2011); see *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283-84 (2005).  The doctrine does not preclude federal jurisdiction over an

---

courts." *Weekly v. Morrow,* 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar of Texas,* 18 F.3d 315, 317 (5th Cir.1994)).

13

"independent claim," even "one that denies a legal conclusion that a state court has reached." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. at 293.

In the case *sub judice*, Gordon, through his attorneys, did not ask this court to review or reject the Default Judgment or Gordon's liability for the debt.  The relief sought in this court was limited to the statutory penalties provided under the FDCPA for a debt collector's failure to comply with the notice requirements of the Act.  The purpose of the FDCPA, it must be recalled, is to prevent abusive practices by debt collectors, not to relieve debtors from their indebtedness.

It is not necessary for this court to resolve the issue of whether *res judicata* or the *Rooker-Feldman* doctrine bar Plaintiff's claims, but only whether Plaintiff's attorneys "conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law".  *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d at 1023-24.  This court is persuaded that Plaintiff's Complaint embodied existing legal principles surrounding FDCPA requirements.

**c. Purposes of delay, harassment, or increasing the costs of litigation.**

The third affirmative duty imposed by Rule 11 is that the modification is not interposed for purposes of delay, harassment, or increasing the costs of litigation. The record does not support that Plaintiff's lawyers acted for the purpose of harassment or delay, nor for purposes of increasing costs of the litigation.  Once Plaintiff's lawyers became aware of the supplemental proof submitted by Defendants, they ceased further prosecution of the lawsuit.  They also did not file unnecessary motions or briefs.

### d. Safe Harbor Provision

A motion for sanctions under Rule 11 must be made separately from any other motion, and the moving party must serve the non-moving party with a proposed motion for sanctions at least twenty-one days before filing it with the court. The motion may not be filed if the non-moving party withdraws or corrects the challenged claim during that "safe harbor" period. Fed.R.Civ.P. 11(c)(2); *Elliott v. Tilton,* 64 F.3d 213, 216 (5th Cir.1995) (quoted in *Barrett-Bowie v. Select Portfolio Servicing, Inc.,* 631 F. App'x 219, 221 (5th Cir. 2015)).

On September 16, 2019, Defendant sent a "safe harbor" letter to Plaintiff. Yet, says the Defendant, Plaintiff's counsel still did not dismiss the case. Plaintiff's attorneys, Curtis Ray Hussey and David N. McDevitt (admitted *pro hac vice*), cite the inability to reach their client as the reason they did not dismiss the lawsuit; however, Plaintiff's lawyers did not provide documentation of their attempts to communicate with their client until after the March 18, 2021, telephonic hearing when this court required them to do so. Defendant, though, complied with the safe harbor requirements of Rule 11, entitling it to sanctions.

### IV. SANCTIONS TO BE IMPOSED

This court's next inquiry then, is: what are the appropriate sanctions? Rule 11 limits sanctions to "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. (c)(4). The sanction may include an order directing payment to the movant of part or all of the reasonable attorney's fees and other expense directly resulting from the violation. *Id.*

Once Defendant sent a "safe harbor letter" to Plaintiff's attorneys, the latter attorneys were under an obligation to ensure they were not in violation of Rule 11, including

15

conducting additional investigation, if necessary. As the Fifth Circuit Court of Appeals stated in *Vanderhoff v. Pacheco,* 344 F. App'x 22, 28 (5th Cir. 2009) (unreported), the purpose of Rule 11's safe harbor provision is to "allow an attorney who is mistaken about the merits of his claim to withdraw it." *Id.,* at 28. Once counsel became aware that their lawsuit was without merit, they were under an obligation to take such action as was necessary to avoid accumulation of additional costs and fees to Defendant. They could not simply bury their heads in the sand, ignore the facts, and attempt to withdraw as counsel.

## V. CONCLUSION

Defendant's Motion for Sanctions **[doc. 21]** is **granted**. This court awards to Defendant UMR its reasonable attorneys' fees for the period beginning November 4, 2019, the date on which UMR provided a supplemental declaration from Mysty Langford and proof of prior payments by Plaintiff on the account – Defendant's strongest proof that Plaintiff received the initial communication concerning this hospital debt prior to 2018.

This court chooses not to award to UMR all of its attorneys' fees, since Defendant only provided the supplemental evidence that was the turning point in the case, over a month after briefing on the Motion for Dismissal or Summary Judgment had been completed. Plaintiff's attorneys, Curtis Ray Hussey and David N. McDevitt personally, are required to pay, jointly and severally, attorneys' fees to Defendant for the period stated – November 4, 2019, through March 24, 2021, the date on which this lawsuit was dismissed. See *Order of Dismissal with Prejudice* [doc. no. 39]. March 24, 2021 is also the date on which Plaintiffs' counsel acknowledged that Plaintiff had abandoned the lawsuit and that the case should be dismissed.

Defendant will submit the Itemized statement of legal fees earned for the designated period within fourteen (14) days of entry of this Order.

Inasmuch as this court has yet to determine the exact amount of attorneys' fees to be assessed against Plaintiff's attorneys, this court **denies** Plaintiff's attorneys' Motion to Withdraw **[doc. no. 19],** so that they may remain in the case until the sanctions amount is finally resolved.  Once this court's final order is entered granting an amount of fees, however, these attorneys may re-file their motion.

Plaintiff is to bear all costs of the litigation.

SO ORDERED AND ADJUDGED, this the 29th day of July, 2021.

                                                  s/ HENRY T. WINGATE
                                                UNITED STATES DISTRICT JUDGE